IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| KIMBERLY S. LONG, § | |
| Plaintiff, § | |
| § | |
| v. § | CIVIL ACTION NO. 4:12-1446 |
| § | |
| BDP INTERNATIONAL, INC., ELITE, § | |
| GROUP, INC., ELITE § | |
| INTERNATIONAL § | |
| TRANSPORTATION, INC., ELITE § | |
| BROKERAGE SERVICES INC., and § | |
| ETS EXPRESS, INC., § | |
| Defendants. § | |

## MEMORANDUM AND ORDER

This Fair Labor Standards Act ("FLSA") case involves claims for unpaid overtime compensation by "logistics coordinators" and "team leaders" who worked with logistics coordinators. The case is before the Court on Defendants BDP International, Inc ("BDP"), Elite Group, Inc., Elite International Transportation, Inc., Elite Brokerage Services, Inc., and ETS Express, Inc.'s (collectively, "Defendants") Motion to Dismiss Opt-in Plaintiff Paula Poteet ("Motion to Dismiss Poteet") [Doc. # 44] and Plaintiff Kimberly Long's ("Long") Motion for Class Notice and for Limited Discovery ("Motion for Class Notice") [Doc. # 54]. The Motions are fully

briefed and ripe for consideration.[1] The Court has carefully reviewed the record, the parties' arguments, and applicable law, and concludes Long's Motion for Class Notice should be **granted in part** and **denied in part**. Defendants' Motion to Dismiss Poteet is **denied**.

I.   **BACKGROUND**

On May 9, 2012, Long, a former logistics coordinator, filed a putative collective action suit alleging that she and similarly situated employees who are or were employed by Defendants were not paid for overtime hours that they worked. Defendants provide logistics services for customers seeking to forward freight. Lynch Depo. [Doc. # 55, Exh. 10], at 34-35. Logistics coordinators "take care of the day-to-day needs and requirements of [Defendants'] customers to facilitate the movement of a shipment out of [] or into the [United States]," including completing paperwork, processing documents, obtaining rate quotes, and contacting customers, shippers, carriers, and United States Customs. Heathcock Depo. [Doc. # 55, Exh. 11], at 54-55. Defendants classify logistics coordinators as non-exempt, salaried employees. Lynch Depo. [Doc. # 55, Exh. 10], at 102-03. When overtime was paid, Defendants apparently calculated overtime pay by determining a putative hourly rate, namely, the employee's weekly salary divided by 37.5 (the number of hours deemed

---

[1]   Long filed a Response to Defendants' Motion to Dismiss Poteet [Doc. # 48], and Defendants filed a Reply [Doc. # 49]. Defendants filed a Response to Plaintiff's Motion for Class Notice [Doc. # 62], and Plaintiff filed a Reply [Doc. # 64].

to be in a workweek) multiplied by one-and-a-half. *See id.*

In response to the Court's order, Defendants produced a list of all Houston logistics coordinators' names, phone numbers, and addresses. *See* Transcript of Aug. 16, 2012 Conference [Doc. # 26], at 14-16; Transcript of Sept. 7, 2012 Conference [Doc. # 29], at 8-10; List of Houston Logistics Coordinators [Doc. # 63, Exh. 8]. Eight of those logistics coordinators and one team leader have opted in to the suit: Jackie Gonzalez, Paula Poteet, (formerly, Paula Calhoun), Norma Salas, Carlos Castillo, Jeffery Sims, Phillip Auzenne, Jorge Reyes, Falynn Szelinski, and James Cox. *See* Opt in Notices [Docs. # 15, # 31, # 32, and # 40].[2] On January 22, 2013, the Court denied BDP's Motion for Summary Judgment and dismissed Opt-in Plaintiffs Falynn Szelinski, Norma Salas, and James Cox from the suit. Order [Doc. # 22].

## II.   LEGAL STANDARD

Suit under the FLSA may be filed "by any one or more employees for and on behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). The term "similarly situated" is not defined in the FLSA. *See, e.g.*, 29 U.S.C. §§ 203, 216. An employee is similarly situated if he or she is "affected by a common policy, plan, pattern, or practice." *McKnight v. D. Hous., Inc.*, 756 F. Supp. 2d 794, 803 (S.D. Tex. 2010) (Rosenthal, J.) (citations omitted); *see also Heeg v.*

---

[2]   Jackie Gonzalez opted in to the lawsuit on August 21, 2012 [Doc. # 15]. Paula Poteet (formerly, Paula Calhoun), Norma Salas, Carlos Castillo, Jeffery Sims, and Phillip Auzenne opted in on September 22, 2012 [Doc. # 31]. Jorge Reyes opted in on September 24, 2012 [Doc. # 32]. Falynn Szelinski and James Cox opted in [Doc. # 40] on October 17, 2012.

*Adams Harris, Inc.*, No. H-12-00684, 2012 WL 5381767, at *4 (S.D. Tex. Oct. 31, 2012) (Rosenthal, J.); *Richardson v. Wells Fargo Bank, N.A.*, No. 4:11-cv-00738, 2012 WL 334038, at *2 (S.D. Tex. Feb. 2, 2012) (internal quotation marks and citations omitted); *Vargas v. Richardson Trident Co.*, No. H-09-1674, 2010 WL 730155, at *6 (S.D. Tex. Feb. 22, 2010) (Harmon, J.).

When considering whether to certify a lawsuit under the FLSA as a collective action, the Court uses a "two-step *ad hoc* approach" in which the Court first determines whether to issue notice to potential members.[3] *See Barajas v. Acosta*, No. H-11-3862, 2012 WL 1952261, at *2 (S.D. Tex. May 30, 2012) (Ellison, J.); *McKnight*, 756 F. Supp. 2d at 800. A named plaintiff must "make a minimal showing that: (1) there is a reasonable basis for crediting the assertion that aggrieved

---

[3] Defendants argue that the Court should apply the approach established in *Shushan v. Univ. of Colo. at Boulder*, 132 F.R.D. 263 (D. Colo. 1990), rather than this approach established in *Lusardi v. Xerox Corp.*, 118 F.R.D. 351 (D.N.J. 1987). Response [Doc. # 62], at 8-9. Although the Fifth Circuit has not required either approach, *see Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1217 (5th Cir. 1995), most courts, including the Southern District of Texas and other courts in this circuit, apply the *Lusardi* approach. *See McKnight*, 756 F. Supp. 2d at 800-01 (citations omitted); *see also La Chapelle v. Owens-Illinois, Inc.*, 513 F.2d 286, 288 (5th Cir. 1975) ("There is a fundamental, irreconcilable difference between the class action described by Rule 23 and that provided for by FLSA § 16(b)."); *Simmons v. T-Mobile USA, Inc.*, No. H-06-1820, 2007 WL 210008, at *4 (S.D. Tex. Jan. 24, 2010) (discussing the Fifth Circuit's position on this issue); *Basco v. Wal-Mart Stores, Inc.*, No. Civ.A. 00-3184, 2004 WL 1497709, at *4 (E.D. La. July 2, 2004) ("Given the direction of the Tenth and Eleventh Circuits and the great weight of district court authority, a consensus has been reached on how section 216(b) cases should be evaluated. It is clear that the two-step ad hoc approach is the preferred method for making the similarly situated analysis and that the similarly situated standard does not incorporate Rule 23 requirements.").

individuals exist; (2) those aggrieved individuals are similarly situated to the plaintiff in relevant respects given the claims and defenses asserted; and (3) those individuals want to opt in to the lawsuit." *McKnight*, 756 F. Supp. 2d at 801, 803; *see also Barajas*, 2012 WL 1952261, at *2 (quoting *Albanil v. Coast 2 Coast, Inc.*, No. H-08-486, 2008 WL 4937565, at *6 (S.D. Tex. Nov. 17, 2008); *Aquirre v. SBC Commc'ns, Inc.*, No. H-05-3298, 2006 WL 964554, at *4 (S.D. Tex. Apr. 11, 2006)).  The named plaintiff must have a factual basis for his or her allegations. *McKnight*, 756 F. Supp. 2d at 801.

At this stage, the Court's decision is generally based on the pleadings, affidavits, and other limited evidence. *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1212 (5th Cir. 1995); *McKnight*, 756 F. Supp. 2d at 801.  "[C]ourts generally look to the factual and employment settings of the individual plaintiffs" in addition to "the existence of a common policy or plan." *Richardson*, 2012 WL 334038, at *2. "Because the court has minimal evidence, this determination is made using a fairly lenient standard, and typically results in 'conditional certification' of a representative class" that provides potential class members with notice and the opportunity to opt in. *McKnight*, 756 F. Supp. 2d at 801 (quoting *Mooney*, 54 F.3d at 1214 n.8). Certification is not always appropriate, however, and requires "substantial allegations that potential members 'were together the victims of a single decision, policy, or plan.'" *Richardson*, 2012 WL 334038, at *2 (internal quotation marks omitted)

(citing *McKnight*, 756 F. Supp. 2d at 801). Certification should be denied "if the action arises from circumstances purely personal to the plaintiff, and not from any generally applicable rule, policy, or practice." *Id.* (quoting *England v. New Century Fin. Corp.,* 370 F. Supp. 2d 504, 507 (M.D. La. 2005)); *see also Barajas*, 2012 WL 1952261, at *2 (quoting *Aquirre*, 2006 WL 964554, at *5). "Ultimately, there must be 'some identifiable facts or legal nexus [that] bind the claims so that hearing the cases together promotes judicial efficiency.'" *Simmons v. T-Mobile USA, Inc.*, No. H-06-1820, 2007 WL 210008, at *4 (S.D. Tex. Jan. 24, 2010) (quoting *Aguirre*, 2006 WL 964554, at *5).

### III.   ANALYSIS

Long requests conditional certification of a class of "all of Defendants' current and former logistics coordinators, team leaders, and persons who performed substantially similar job duties under other titles who worked more than forty (40) hours in a workweek but were not paid for off-the-clock and overtime hours" at some time during the three years before the date of Court's decision on the Motion for Class Notice. First Amended Complaint [Doc. # 35], at 2. Defendants argue that Long has failed to make the minimal showing for class notice because her evidence is "anecdotal" and because Long and Opt-in Plaintiffs' unpaid overtime complaints are

"highly individualized" on a manager-to-manager basis. Response [Doc. # 62], at 14-15.

### A.     Conditional Class Certification for Houston Logistics Coordinators

Long has provided evidence of Defendants' policy of not paying overtime to logistics coordinators in Houston.  Bill Heathcock ("Heathcock"), BDP's Director of Gulf and West Coast Operations who was based in Houston, testified that Defendants had trouble making a profit during the last two months of 2008 and the first half of 2009.  Heathcock Depo., at 38.   To deal with these challenges, in 2008, Heathcock stated that Defendants took company-wide steps to reduce labor costs, including overtime costs.  *Id.* at 94.   On August 22, 2012, Heathcock sent an email to the Houston managers stating that overtime costs "must cease immediately until further notice."  Heathcock Email [Doc. # 56, Exh. 14].  On March 25, 2012, Kenneth Cloud ("Cloud"), BDP's Vice President of Operations, sent an email imposing a moratorium on all overtime in Houston.  Cloud Email [Doc. # 55, Exh. 13].  Heathcock responded to Cloud that an overtime moratorium was already in place in Houston.  *Id.*  Similarly, several BDP supervisors and other officials determined that Long was not eligible for overtime because of BDP's "OT Policy."  Lynch Depo. [Doc. # 58, Exh. 1], at 194 (referring to Bonnie Guistwhite, BDP's Manager of Employee Relations and Training; Catherine Muldoon, BDP's Chief Global Counsel; Heathcock; and himself); Note [Doc. # 58, Exh. 2], at 23.

In addition, Long relies on the declarations of seven Houston logistics coordinators in support of her position that Defendants' company policy was not to permit overtime.[4] These witnesses each state that in late 2008, Defendants informed employees that overtime would no longer be allowed and staff reductions required employees to take on additional work. *See* Reyes Decl. [Doc. # 55, Exh. 4], at 2; Auzenne Decl. [Doc. # 55, Exh. 5], at 2; Sims Decl. [Doc. # 55, Exh. 6], at 2; Castillo Decl. [Doc. # 55, Exh. 7], at 2; Long Depo. [Doc. # 55, Exh. 9], at 87. Szelinski and Cox explained that Terry Derr, a member of upper management in Houston, met with the Houston logistics coordinators and informed them that they needed to "do what it takes" to get their work done even though they would not be paid for overtime work. Szelinksi Decl., at 4-5; Cox Decl. [Doc. # 56, Exh. 9], at 5.[5] Szelinksi also explains that several times per week Ochoa asked his co-workers and him to work through their lunch hours, Szelinkski Decl., at 2, but did not offer them overtime compensation. Cox was told by his Team Leader, Cesar Burdet, and each of his

---

[4] Falynn Szelinski ("Szelinski") [Doc. # 55, Exh. 1], Jorge Reyes ("Reyes") [Doc. # 55, Exh. 4], Phillip Auzenne ("Auzenne") [Doc. # 55, Exh. 5], Jeffery Sims ("Sims") [Doc. # 55, Exh. 6], Carlos Castillo ("Castillo") [Doc. # 55, Exh. 7], Normal Salas ("Salas") [Doc. # 55, Exh. 8], and James Cox ("Cox") [Doc. # 56, Exh. 9].

[5] Defendants argue that the declarations submitted by Long are "boilerplate, conclusory, lack adequate foundation, and are replete with hearsay." Response [Doc. # 62], at 12-13. The Court relies on these and other declarations only insofar as they do not contain inadmissible hearsay, such as their references to matters the declarant personally observed.

managers, Denise Ochoa ("Ochoa"), Nelson Varughese, and Marla Chahda, that he would not be paid overtime, he needed to work as many hours as necessary to complete his job duties, and he should not communicate over telephone or email during overtime hours in order to avoid creating a record of his overtime hours. Cox Decl., at 2.

Auzenne reports asking managers Lauren Fincher and Debbie Holt for overtime and being told that overtime would not be paid. Auzenne Decl., at 2. The managers told Auzenne that employees who could not finish their work would receive write-ups and face termination. *Id.* Sims was told the same thing by managers Holt and Joe Messick, Jr. Sims Decl., at 2. Further, he was told by Team Leader Tunis Perez that employees who left without working overtime would be the first to be fired. *Id.* Salas was told by her manager Kellie Hardy that her work needed to be done even if she had to work long hours. Salas Decl., at 2. Salas observed her team leader and Hardy working overtime hours at the same time Salas worked overtime, even though none were permitted to seek overtime pay. *Id.* Other declarants explain that although they did not always report their overtime hours, their supervisors saw them working overtime. *See, e.g.*, Szelinksi Decl., at 2; Reyes Decl., at 2; Auzenne Decl., at 2; Castillo Decl., at 2. According to these witnesses' declarations, other Houston employees who have not yet opted into the suit also worked overtime hours without

pay. *See, e.g.*, Reyes Decl., at 3; Auzenne Decl., at 2; Sims Decl., at 2.

Long has made a reasonable showing that logistics coordinators in Houston were impacted by Defendants' city-wide policy of denying pay to employees for work over forty hours per week. *See, e.g.*, *Clarke v. Convergys Customer Mgmt. Group, Inc.*, 370 F. Supp. 2d 601, 606 (S.D. Tex. 2005) (Harmon, J.) (granting "conditional certification of and notice to workers (1) in a single job category (2) on a single floor (3) at a single facility (*i.e.*, the Houston call center) (4) who were all hourly, non-exempt employees" who had been "subjected to the same unlawful practices" and "performed the same type of pre-and post-shift, off-the-clock tasks"). Conditional certification of a Houston Logistics Coordinator class is appropriate.

### B. Logistics Coordinators Outside Houston

Although Long has made a reasonable showing that there are similarly situated logistics coordinators in Houston, she has not provided evidence sufficient to warrant conditional class certification for a national class of these employees. Defendants have approximately twenty-three operations centers in the United States with more than 1,000 employees. *See* Lynch Depo [Doc. # 55, Exh. 10], at 90; Heathcock Depo. [Doc. # 55, Exh. 11], at 45-46. To support her argument that the Court should certify a nation-wide class, Long provided two declarations from BDP employees employed outside Houston. The first, Melinda Ambrose ("Ambrose"), a team leader, states that,

at the end of 2008, the BDP management in York, Pennsylvania, gave employees additional responsibilities and stated that "overtime would not be an option." Ambrose Decl. [Doc. # 55, Exh. 2], at 2. Although working overtime often, she and the members of her team would only request overtime infrequently, and Ambrose had "not more than 10% of [her] requests for overtime pay" granted. *Id.* at 3. She explained that she usually did not ask for overtime pay and when she did ask, she would not list all of the hours she worked. *Id.*

The second, Bernice Ambert ("Ambert"), a logistics coordinator located at BDP's Chicago office, states that she worked over 40 hours a week from March 2008 until she left BDP in May 2011 and did not get paid overtime "[f]or the vast majority of those weeks." Ambert Decl. [Doc. # 55, Exh. 3], at 2. On one occasion, she was told by the head of the Chicago office, Jimmie Daniels, that she needed to work through lunch. *Id.* "At some point in 2009," Daniels met with employees in the Chicago office and told them that overtime would not be approved. *Id.* After that meeting, Ambert mostly did not submit overtime sheets. *Id.* Overtime was approved on large accounts, and Ambert had about four overtime requests approved in 2010 and 2011. *Id.* She admits that she had trouble submitting overtime requests because she would not know ahead of time when she would need to work overtime.[6] *Id.*

---

[6]     In addition, Szelinski states in her declaration that she worked with two Team
(continued...)

Although Ambrose and Ambert report that Defendants tightened their overtime policy in Pennsylvania and Chicago at approximately the same time reported by the other Opt-in Plaintiffs, Plaintiff Long offers no evidence that these policies were part of a single company-wide policy. Unlike in Houston, there is no evidence that such a policy was made by a central decision-maker, rather than individual managers. Much of Long's evidence from affiants outside Houston appears to be that the employees "alleged difficulty of finishing all their assigned duties within a forty-hour workweek and managers' alleged awareness that employees worked unlogged hours." *Richardson*, 2012 WL 334038, at *5. As this Court held in *Richardson*, this evidence is not sufficient to prove a management-directed, company-wide national policy. *Id.*; *see also Carey v. 24 Hour Fitness USA, Inc.*, No. H-10-3009, 2012 WL 4857562, at *2 (S.D. Tex. Oct. 11, 2012) (rejecting class notice although plaintiff alleged that his employer imposed sales goals on employees that could not be met without working overtime and that management did not want employees to record overtime hours in order to reduce labor costs). "Subjective beliefs or fear about logging overtime hours

---

6    (...continued)
Leaders, Judy Fortune ("Fortune") and Jennifer Gonzales ("Gonzales"), and a logistics coordinator, Pamela Long, who worked overtime hours in New Jersey. Szelinksi Decl., at 3. However, Szelinski does not indicate whether Fortune or Pamela Long were paid for their overtime. *Id.* Although Szelinski states that Gonzales and she discussed the fact that they were not being paid overtime, *id.*, she does not indicate whether the New Jersey office applied a central-management policy or a local practice.

is insufficient to establish an actual company-wide policy." *Richardson*, 2012 WL 334038, at *5 (citing *Brooks v. BellSouth Telecomm., Inc.*, No. 07-cv-3054, 2009 U.S. Dist. LEXIS 20552, at *30 (N.D. Ga. Feb. 10, 2009)).

Further, Ambert's declaration indicates that Ambert received some overtime pay each of the four times she submitted an advance overtime request, and that it was her individual managers who discouraged her from reporting overtime. Ambert Decl., at 2. Evidence of individual managers requiring employees to work overtime and discouraging reporting of that overtime is insufficient to establish a national, company-wide policy. *See Richardson*, 2012 WL 334038, at *4 ("The fact that three or four managers allegedly required or condoned off-the-clock work is insufficient to warrant the complex, enormous, nationwide class that Plaintiffs request. It is clear that resolution of each Plaintiff's claim will require individualized inquiries about his or her specific managers' policies and practices." (citations omitted)); *Salinas v. O'Reilly Auto., Inc.*, 2005 WL 3783598, at *6 (N.D. Tex. Nov. 17, 2005) ("[Plaintiff's] evidence, taken as true, merely shows that a handful of [Defendant's] managers have committed possible FLSA violations in a variety of different ways . . . As these claims are flavored by particularized conduct occurring at the store/manager level, they should appropriately be tried separately.").

The Court concludes, therefore, that Long has not shown that Defendants had

a national policy of denying employees compensation for overtime hours. Without this evidence, the Court declines to conditionally certify a national class.

### C. Conditional Certification of a Class of Team Leaders

Defendants argue that team leaders are not similarly situated to logistics coordinators. Defendants seek to limit the class to logistic coordinators and to dismiss Opt-in Plaintiff Paula Poteet ("Poteet"), who, unlike the other Opt-in Plaintiffs, was employed by Defendants only as a team leader and not a logistics coordinator.[7] Specifically, Defendants argue that team leaders, like Poteet, are exempt, salaried employees who had supervisory roles. Motion to Dismiss Poteet, at 3; Motion for Class Notice, at 16-19.

Although Defendants categorized team leaders as exempt employees under the FLSA, team leaders have duties very similar to logistics coordinators. Both are salaried employees. *See* Lynch Depo. [Doc. # 55, Exh. 10], at 103. The job description for a team leader is substantially similar to the job description for the most senior logistic coordinators, named by Defendants "logistics coordinator IIIs." Indeed, twenty-nine of the thirty-three essential functions of team leaders are also essential functions of logistics coordinator IIIs. *Compare* Team Leader Job

---

[7] Poteet was hired on January 1, 2009 as a team leader. Decl. of Lynch [Doc. # 44, Exh. A], at 2. On May 1, 2009, she was promoted to the position of Division Manager. *Id.* Poteet's job title changed to "Team Leader (B)" on August 23, 2009. *Id.* She resigned on October 14, 2010. *Id.*

Description [Doc. # 63, Exh. 4], *with* Logistics Coordinator III Job Description [Doc. # 63, Exh. 5]; *see* Lynch Depo. [Doc. # 55, Exh. 10], at 46-47.  The team leader job description reflects that team leaders must "[a]nswer day to day operational questions" of logistics coordinators, *just as* logistics coordinator IIIs must train, advise, and guide other logistics coordinators regarding commonly arising issues.  Lynch Depo. [Doc. # 55, Exh. 10], at 52; *see also* Heathcock Depo., at 56-57.[8]

Argument by counsel for Defendants at a conference reinforces the Court's conclusion that there is sufficient evidence to warrant conditionally certifying a class of team leaders.  Counsel asserted that, by and large, team leaders are not supervisors exempt from the FLSA.  Counsel stated that team leaders "have no direct supervisory authority, except in the absence of the manager."  Transcript of Sept. 7, 2012 Conference [Doc. # 29], at 11.  According to Defendants' counsel, team leaders do the same work as logistics coordinators except team leaders also have a supervisory role during the two weeks each year when the group's manager is on vacation or when the manager has another absence and no director can fill in.  *Id.* at 11-12.  Finally, defense

---

[8]   The Court is aware that Lynch also testified that the job description for team leaders requires team leaders to "[s]upervise[] daily work of Logistics Coordinators (I, II, and III) including checking documents" and to "[d]irect[] clerical staff in expediting export correspondence and credit collections" [Doc. # 63, Exh. 4, at 5].  There is a fact issue concerning the team leaders' duties and the proportion of time spent on supervisory versus non-exempt functions.  These matters may affect the viability of team leaders' overtime claims, but the issues must be determined after discovery is completed.

counsel asserted that managers, not team leaders, oversee the logistics coordinators, *id.* at 12, indicating that team leaders do very little supervision.

The Court concludes, based on a relatively limited record, that conditional certification of a class consisting of team leaders in Houston is warranted. At this stage in the two-step approach, "'[P]laintiffs need show only that their positions are similar, not identical, to the positions held by the putative class members.'" *Quintanilla v. A & R Dolitina, Inc.*, No. H-04-1965, 2005 WL 2095104, at *16 (S.D. Tex. Aug. 30, 2005) (Rosenthal, J.) (quoting *Hipp v. Liberty Nat. Life Ins. Co.*, 252 F.3d 1208, 1217 (11th Cir. 2001)). "During the second stage [of the *Lusardi*] analysis this court will determine if the workers' positions and the type of work performed in those positions raise individualized fact issues that make the claims unsuitable for collective actions." *Id.* at *16 (citations omitted).

Plaintiff Long has demonstrated at this early stage in the litigation that the team leaders' job duties are sufficiently similar to the job duties of at least some of the senior logistics coordinators that a conditional class of team leaders should be certified. Defendants' objections here "go to the merits of the action or the forum in which these claims ultimately should be resolved, not whether notice to potential claimants should be given. Defendants' arguments will be addressed in due course once the identity of potential class members is determined." *Vilatoro v. Kim Son*

*Restaurant, L.P.*, 286 F. Supp. 2d 807, 811 (S.D. Tex. 2003).  If, after full discovery, team leaders are exempt employees with job duties distinct from logistics coordinators, the class of team leaders may be decertified.

### D.    Additional Discovery

Long has requested the last known addresses, phone numbers, dates of birth, and social security numbers of class members.  *See* Motion for Class Notice, at 22-23. This discovery was granted in part prior to and at a conference held on February 5, 2013.  Plaintiffs obtained discovery to some extent.  As to future discovery, the Court ordered on February 5th, that Defendants' counsel provide to Plaintiffs' counsel contact information for current and former Houston logistics coordinators for a three year period.  The Court now orders the same disclosure regarding current and former Houston team leaders.  Plaintiffs' counsel may use this information only for the purpose of giving notice to members of the conditionally certified classes.  As to Defendants current and former employees not included in the conditionally certified classes, discovery is denied.

## IV.   CONCLUSION AND ORDER

Based on the foregoing, it is hereby

**ORDERED** that Defendants' Motion to Dismiss Opt-in Plaintiff Paula Poteet [Doc. # 44] is **DENIED.**  It is further

**ORDERED** that Plaintiff Kimberly Long's Motion for Class Notice and for Limited Discovery [Doc. # 54] is **GRANTED** to the extent Plaintiff Long seeks to conditionally certify a class of logistics coordinators employed by Defendants in Houston, Texas, between February 5, 2010, and the present, and to the extent Plaintiff Long seeks to conditionally certify a class of team leaders employed by Defendants in Houston, Texas, between February 5, 2010, and the present, but is otherwise **DENIED**. It is further

**ORDERED** that Defendants' objections to the form of Plaintiff's proposed class notice are **SUSTAINED** to the extent set forth on the record in open court during the hearing on February 5, 2013. It is further

**ORDERED** that the notice for logistics coordinators will refer only to that title; there is no need to mention import or export coordinators. It is further

**ORDERED** that the notice to potential team leader class members must match the notice to logistics coordinators. It is further

**ORDERED** that the additional discovery sought by Plaintiff in her Motion for Class Notice and for Limited Discovery [Doc. # 54] is **GRANTED** to the extent described by the Court on the record in the hearing on February 5, 2013, and in this Memorandum and Order.

SIGNED at Houston, Texas, this **8th** day of **February, 2013.**

Nancy F. Atlas
United States District Judge